15-1776 Carl Storz Endoscopy-America v. Integrated Medical Systems Michael Kozma Good morning, Your Honors. My name is Michael Kozma. I'm from the Whitmer IAP group here on behalf of Carl Storz. The question I appeal today is whether the shared disclosures of 945— In your brief, you cite various dictionary, thesaurus, and explanatory note entries. Appellant's brief at 14, discussing the definitions of transparent and opaque from wwwdictionary.com. 21, discussing explanatory notes from merriam-webster.com for the term especially and the impact of especially. Pages 22 and 24, note 8, discussing synonyms for translucent from thesaurus.com and the definition of opaque from dictionary.com. Where's that in the record? Well, Your Honor, the definitions used by the examiner was brought up on the right of notice of appeal. There was no other evidence put in after that. While these were not on the record earlier on, they're not necessary for our argument. They were more explanatory of the whole— So we can ignore them? You can't ignore them, yes. Okay, fine. So the 437 patent, the question is whether 945 and 437 patent disclosures support the use of translucent materials. Well, I don't think there's a question that 437 does support the use of translucent because it incorporates, by reference, the PCT and the German app. The question is can it claim priority to 945? I think the whole question is does 945 support translucent? The 945 and the 437 patents have substantially the same specification. That's a division in part, and they don't have the same specification in the critical way in which they did. 945 didn't incorporate, by reference, the PCT and the German application. It's a pretty substantial difference. 945 does claim priority to the PCT and the German application. The 945 claims priority to it but doesn't incorporate it by reference, which means we don't read the German application and the PCT and all that they disclose as being likewise disclosed in the 945 itself. You know what it means to incorporate something by reference, right? Correct. You know what it means to claim priority to something. Oh, yes. You understand how they're different. Yes. You understand that when you claim priority to something, you don't necessarily get its entire disclosure read into your own, correct? That is correct. Okay. I understand, Your Honor. So despite the board's finding that PCT and German applications teach the use of translucent materials, it adopts the examiner's improper conclusion that the 945 patent teaches away from translucent materials. As a result, the use of translucent materials in the 437 patent was improperly found anticipated by the PCT and German applications, from which the 437 claims priority. The board's decision is erroneous as a matter of law for at least three reasons. First, the board erred by finding the 945 patent is limited to clear materials, even though the word clear is never used in the specification. But it uses the word transparent. That is correct. It uses the word transparent, but it's not limited to just that embodiment. Second, the board erred by... I'm trying to completely understand this whole debate here. As I understand the allegedly infringing device that attempted to design around your patent has something that is referred to as being smoky, right? So it's not really clear that it's translucent versus transparent or that under the doctrine of equivalence, it wouldn't fall within the bounds of transparent as originally claimed. So why do you have to have translucent and transparent being one and the same? Well they're not one and the same. Looking through the prosecution and the inter-parties re-examination, transparent and translucent are claimed separately. Right. But I mean, but you're essentially saying that all the descriptions in the specification would give rise to either one. That's correct. Because all that's required by the invention is the visual inspection of the optical components once the material is shrunk. So as in the prior art, the opaque material was used and once the material was shrunk around the optical components, there's no way to visually check whether the optical components had shifted and were unsatisfactory for use. You say in your brief, towards the end, that what is desired is material that permits inspection of optical components. That's correct. How can you inspect through translucent material? So the whole point of translucent is that it doesn't entirely transmit the light. It's an alignment issue. So when you have the optical rod lenses in the shrinkable material, what you can see is once the material shrinks, whether it shifts or not, you just need to be able to see what the alignment is of the lenses. You can see that through translucent material. One of our skill in the art would recognize this and as the inventors knew at the time that this was possible as evidenced by the PCT in the German applications, all that's required is the visual inspection for alignment. So once the material is shrunk, well in the prior art, once the material was shrunk, the material was opaque and what was required was the full assembly of the endoscope itself. Once the endoscope was fully assembled, then you'd have to look through the endoscope to see whether they were aligned or not and if they were misaligned, the optical components, then it would require a full disassembly which is quite expensive and time consuming. So what the inventors came up with was using a material that is not opaque that allows the passage of light and once the material was shrunk, the inventors could look through the material, see whether the alignment was correct and from that alignment, they would be able to now know that once they assembled the endoscope, the endoscope would function properly. So even though the 945 patent discloses transparency, you think that something less than that or less than that allows for you to see the alignment is sufficient? That's correct. And will be covered. So what about a series of mirrors? Like your rearview mirror, right? I mean, I actually, so I've had lots of little kids in my lifetime and I don't know if you've ever seen it, but I use my rearview mirror and then they're facing backwards because they're in a car seat and you put a mirror on the back of the seat. So I look in my mirror, see into that mirror and thereby see the face of my child even though they're facing that way and I'm facing this way. Is that now also disclosed in the 945 patent because it still allows visual inspection for alignment purposes vis-a-vis a series of mirrors that reflect off each other? You see where I'm going, obviously. I'm sorry. I do not. You don't? No. I don't think that just because you disclose transparency and clear viewing of something, you necessarily, by virtue of disclosing that, get to claim every mechanism by which you can view two things in order to establish alignment. I'm disclosing a complex set of mirrors in order to see whether two things could be aligned. Clearly the 945 patent doesn't disclose a complex set of mirrors to allow you to determine, even with an opaque shading, what's going on behind the opaque, right? So it's a particular way that is disclosed of being able to ensure alignment. Well, the 945 patent never uses the word clear. The 945 patent does use the word transparent. It also, however, it merely, the 945 patent improves upon the prior art by disclosing the method of inspecting. And if we look at Column 1, Lines 53 through 57, the patent specifically states that it is an object of the present invention to further optimize an endoscope in a method for assembling components in such a way that by using shrinkable materials, it is possible to fix the optical components relative to one another in a way which can also be checked. So first you're fixing the optical components together in series, and now you're able to visually inspect them. So in Column 1, Lines 53 through 57, transparent is not used. It's just saying that the object of the invention is the inspection of the rod lenses once they are secured in the shrinkable material. So you think that by virtue of that, you should be entitled to come along in a divisional or a CIP or something and claim any method of inspection, even by mirrors. Any method of inspection and claim priority to 945 because it set out the goal of being able to inspect. The inspection is after, is visual inspection, not through mirrors, is visually inspecting the rod lenses through... Generally one visually inspects in a mirror, do they not? No, that's correct. The object is looking at the alignment through the material. So you have the shrinkable material, you fix the rod lenses, and now you visually look through the material to see whether they are in alignment. And whether it is perfectly clear or translucent, that doesn't matter. It's when it's still in the art, we understand how to inspect those. And when it's still in the art, we understand to look at the alignment through the material once it's shrink-wrapped. What I don't understand is why did you bother with this divisional? I understand that they tried to design around, but why didn't you just argue that the word transparent in the claim was broad enough to encompass anything that you could see through sufficiently for purposes of determining alignment? Well, Your Honor, I do agree that transparent should be broad enough to cover all these embodiments. Or that even if it wasn't, you'd have a good argument under DOE. I guess I don't understand why, having gone to the divisional, you're the one who created this distinction between what is translucent and what is transparent. I'm not sure where Smoky falls in on that spectrum, but I guess I'm trying to understand what the point of the divisional was. I agree, Your Honor, that we are making a distinction here between translucent and transparent. The fact that we are right now is that we have a definition of transparent and a definition of translucent. The question now is whether the specification of 945 patent does cover the range. And it's our contention that it does cover the range, because all that's required is how to inspect the rod lenses prior to assembly of the end of the scope. But now you've got a problem in that you have differentiated between the two things. We have differentiated, Your Honor. Right. And so you created that claim differentiation problem that you wouldn't have had. It is here, yes. Now, assuming that we don't agree with you, is there any ability for you to argue DOE with respect to the original claims? Well, now that the written description of the 945 patent has been found not to support translucent, we would be able to put more evidence on the record of what Winnowing Skilling Yard would understand through the 945 patent. So we would not be limited on that finding. You can still argue infringement under 945, even if you can't under a 437? That's correct. That's your question, right? Yes. So we would be able to support, to put declarations and evidence of Winnowing Skilling Yard on that. The evidence of Winnowing Skilling Yard here today is we have the intrinsic record. So looking at the intrinsic record is where we should start. However, the examiner went to an extrinsic source and he went to dictionary definitions. Now, you're into your rebuttal time. Do you want to save the remainder? It's your time. Thank you, Your Honor. I would just like to say that one of the big errors the board had was not using the broadest reasonable interpretation of translucent, and that's where we got to clear. So looking at the Marin-Ripson's dictionary, the examiner looked at the medical dictionary and found that permitting the passage of light was the definition of translucent, but then he took the more narrow definition saying transmitting and diffusing light so that objects beyond cannot be clearly seen. However, he was required, only once he took that narrower definition was he able to find his teach-away argument to say that somehow transparent teaches away from translucent. However, there's no evidence that there's a teach-away. The specification never says that transparent or clear is required. The specification says the object of the invention is to visually inspect the components. Which of the two words do you think is broader, translucent or transparent? So they can't be of equal scope. So which one's the broad one and which one's the narrow one? Translucent is broader. Translucent is broader? Yes. So if something is translucent, you think it's also transparent? Yes. No, translucent would cover transparent. So translucent just permits the passage of light, which would cover transparent, and Wait, wait, is something that's translucent transparent? Not necessarily. Okay. Not necessarily. Transparent is a... So it wouldn't necessarily cover it? Transparent would be the species of the genus translucent. That's what we would... So you think everything that is transparent is automatically translucent? It permits the passage of light. So our position... But translucent permits the passage of less light. We would say it would cover up to translucent, because as the board found it, nothing is completely transparent. Even any material would diffuse, scatter light. So there is some sort of translucence under transparent. Okay. We better save the rest of your time for rebuttal, Mr. Cosman. Let's hear from Mr. Carr. Good morning, Your Honor. Excuse me. May it please the court, I am Dabney Carr, and I'm here today on behalf of the Appellee Integrated Medical Systems. The arguments that Storrs has presented here today were not presented below to the board, and so they have been waived. In particular, Storrs' primary argument that you heard today was an argument about claim construction. No claim construction argument was raised to the board. In fact, there was no challenge whatsoever to the definitions that were used by the examiner and by the board in their decisions. And so those arguments have since been waived. And as Judge Wallach pointed out, Storrs has also offered new evidence on appeal. And in particular, I would cite to the explanatory notes from Merriam-Webster.com that Storrs referred to. Their entire claim construction argument is based... Just out of curiosity, if I was construing a statute, are you telling me as a judge I'm not permitted to look at a dictionary because the parties didn't cite it to me? If you are a trial judge, no, you could. Absolutely. But at an appellate court, you are limited to the record that was introduced at the trial below. And as a judge, I'm not permitted to take judicial notice or look at a dictionary definition in a dictionary? Not at the appellate level. And the reason is, is because at the trial level, or in this case, the board level, you don't have the view of what the board would have done with that definition if it had been presented to them. That's the entire reason for the position. I frame my argument in terms of statutory interpretation. Yes. So you're saying an appellate court should adopt an incorrect statutory interpretation, which will then bind all future cases solely because somebody didn't point out the dictionary and that appellate courts aren't free to look to dictionaries in order to find statutes? Because let me just tell you, there are lots of times when appellate courts adopt a definition that's different from the one either party argued for. So that's not something that's within my permissibility? To the breadth you're taking it, you're correct, Your Honor. That in a statutory sense, perhaps you could. I don't think that applies here, though. And because of two reasons. Not only did they not present this evidence to the board, and so we do not know what the board would have done with it. But they did not raise any kind of challenge to the definitions at all. So isn't that the distinction? Because our case law is pretty clear that if you come up here on appeal and you have additional grounds to support the claim construction that you argued for below, that you can present those additional grounds from the specification or from wherever. But what you're saying is they didn't even raise a claim construction. That's exactly what I'm saying. If they had raised a challenge to the definitions, or they had said to the court that you need to construe translucent and this is the construction, then it would be an entirely different situation than we have here today. And so I think the situation we have here today, as noted by scores, is whether or not the 945 provides a written description for translucent materials. And that is an issue that this court reviews for substantial evidence. And so the evidence before the board at the time is supported by substantial evidence. The board offered four different bases for its reasoning. Let me stop here and mention what scores said on their initial argument about the word clear. The examiner referred to the clear visibility of being necessary under the 945. The board did not. And the examiner explained that the visible... But you can see that the specification doesn't use the word clear. That's correct. It uses the word transparent or the other phrase is by virtue of transparency. See, my problem is if you put aside the divisional, if the board was looking at this, and they're looking at the word transparent, and they read this specification that's all about being able to determine the alignment, that I wouldn't be surprised under BRI if the board wouldn't say that includes relatively translucent materials. So, I mean, part of the discomfort here is knowing full well where the board would go under its BRI application if it was presented just in a slightly different format. Well, I think that's part of the problem with the fact that they didn't raise it below. It's because then the board could have addressed it. And we could have presented evidence on the issue as well and presented the argument there. And so then you can answer the question whether under BRI the court would have adopted the more broader definition of permit the passage of light for translucent. I don't think that... I'm not sure under BRI that the board would have reached a different decision, frankly. Because there's no requirement that the board only take the first half of the definition that they cite, which is essentially what STORS wants them to do, and ignore the second half. And I'll mention that the sense divider in the explanatory notes, what it says in those explanatory notes is that what follows the sense divider is the more common definition of the term. So that actually works against STORS. Because what follows is the part that STORS wants to keep out, which is that objects cannot be seen clearly as a definition of transparent. But do you consider that your smoky material is such that you can sufficiently see through it for purposes of determining the alignment? Whether that meets transparent? Is that what you're asking? No, just that you can see through it sufficiently for purposes of determining alignment. Smoky material, well in this case the material that we use, which they have characterized as smoky, you cannot look through it to determine alignment when it is used in the process. So whether smoky could or not, I don't know. You're saying your material is opaque. I'm saying our material does not allow visual inspection through the material of the components. So I don't want to say that it's either opaque or transparent or translucent. It's certainly not transparent because you cannot see it clearly. And I don't even believe it is translucent. Because it's very difficult to see anything through the material that we use. And so whether smoky material is translucent or not, obviously it's not before the court right now. And if we got to that factual issue at a later trial on infringement, I think we would probably prevail. I don't think any jury would find that you can view the components through this material. But it's not raised. But that's not before you. That's correct. My point of what's before you is whether what the board did is supported by substantial evidence. And the four reasons they gave that only transparent was used in the 945, and I'll point out the one portion of the specification that Storrs pointed to in its argument, is then followed immediately by two sentences, each of which use the word transparent. By virtue of the transparent material, the object of the invention can be obtained. Then the board focused on the contrast and the plain meanings of the terms. And we believe that the plain meaning of the terms that the board used are supported by substantial evidence. And then that the board looked to that the visual inspection function was only attributed to transparent material. This is a little bit to the clear visibility point that Storrs brought up. That's what the examiner said. Then the board said it slightly differently. The board simply said that the only thing that the 945 specification attributes the inspection function to is to transparent material. And then lastly, which is also supported by substantial evidence, is that the exclusion of opaque is not inclusion of all opaque. And again, that's supported by substantial evidence. I wanted to make one other point regarding the whole issue of the definition of translucent that Storrs has raised. It goes to the genus species. And it goes a little bit to Judge Moore's question about the multiple mirrors. And that is that what Storrs has to show you today is that transparent is a species of the genus translucent. There isn't any evidence in the record of whether or not there is a genus species relationship between the two. One as being a subset of the other. And in fact, the truth is that they are different materials with different characteristics. One you can see through clearly, one you cannot see through clearly. And so, first of all, there is no genus species relationship on which the board could find. And Storrs needs to show that in order to prevail. Because if it's not a species of the genus transparent, I'm sorry, of the genus translucent, then they cannot prevail in the argument. And even if it is, then the problem they have beyond that is that you have to show either that it's a representative number of the species or that structural features common to the members of the genus are disclosed. And there's no showing that transparent is representative of the genus translucent. And there's no structural features common to the members of the genus that is shown in the disclosure. The one argument that Storrs makes about this features section of what they would need to prove is that it's defined by the function. But the course jurisprudence is clear that you cannot define the genus by the function. It's the Eli Lilly case that we cite in our briefs. So even if you accept, and my point being that even if you accept that they are correct on their definition of translucent, they can't get to the point that they need because they cannot overcome the species genus problem in their argument. Unless you have any more questions, that's all. No, thank you, Mr. Carr. Thank you. Mr. Cosma, you have a few minutes of rebuttal left. I'd like to first point out that IMS brought up that the following two sentences after column one, lines 53 to 57, disclosed transparent. However, that's in a separate section. What the section we pointed to was the background invention where the inventors pointed out the problem in the prior,    And then they brought it up in a separate section, That next went on to the summary of the invention, but the background is where we show what the inventors are looking to do and that's visually inspected components. Next, I'd like to say that Carl Storch has consistently argued that the point of the invention is the visual inspection, and that was in our appellate brief at A482. So we have consistently argued that translucent materials are covered throughout. Next, I'd like to say that the examiner's failure to use the broadest reasonable interpretation is where the error of the clear requirement comes from. But his argument is that you waived that. You didn't argue claim construction. We argued that at A482, we did argue that the claim construction of the translucent was incorrect. And that was in our appellate brief to the PTA base. So you argued it in your appellate brief to the PTA. Did you argue it? The first time that that came about was at the write of a notice of appeal from the examiner. And once the write of notice of appeal was issued, Carl Storch did appeal it to the PTA base. So it was appealed. Do we have anything further? I think your time is up. Okay. Thank you both counsel. The case is taken under submission.